In the Matter of the Application of CHARLES BASILE, as President of Local Union 584, Unit 3, Petitioner, for an Order Directing that an Arbitration Proceed between the Said CHARLES BASILE, as President of Local Union 584, Unit 3, and SHEFFIELD FARMS COMPANY, INC., Respondent.

Supreme Court, Special Term, New York County, December 12, 1938.

*Melton, Lebovici & Arkin,* for the petitioner.

*Alger, Peck & Grafton,* for the respondent.

NOONAN, J. The president of Local Union 584, Unit 3, a labor union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, whose membership numbers about 5,500 employees who are employed exclusively by Sheffield Farms Company, Inc., the respondent herein, petitions for an order directing that an arbitration proceed as to certain disputes alleged to have arisen between the parties, in accordance with the provisions of an agreement between the parties, dated July 16, 1937, and that pending the determination of the arbitrators the respondent be enjoined from proceeding with the reorganization of its routes and terminating the services of route drivers employed on such routes.

The labor union is an unincorporated association and the respondent corporation is engaged in the manufacture and sale of milk

products within and outside of the State of New York. On July 16, 1937, the parties entered into a written agreement, the material paragraphs of which in relation to this controversy are as follows:

" Paragraph 13. Economic and competitive conditions in the the industry require a reorganization of the manner and method of distribution now in effect. It is, therefore, agreed by the parties hereto that such reorganization of the manner and method of distribution may from time to time be effected by the Company. Before such reorganizations are effected, the matter will be discussed with the Union."

" Paragraph 9. There shall be a steward at every branch, pasteurizing plant, Bailey Ave. Machine Shop and Jamaica Wagon Shop. Said steward shall be elected by members of the Union in the manner later prescribed and shall be an employee. * * * If violations of this agreement occur and are not corrected, he shall report same to the Board of Shop Stewards. The Superintendent or Branch Manager shall recognize him as the representative of the Union locally; likewise inform him prior to laying off of employees. In the event of a hardship on the part of a man the shop steward shall bring it to the attention of the company's representative, as provided in paragraph 6."

Paragraph 6 provides, " any employee having a grievance shall have the privilege of filing such grievance with the steward within three days. The case shall be presented to the Superintendent or Branch Manager whose answer shall be given within three days. If the Shop Steward and the Superintendent or Branch Manager cannot arrive at an adjustment of the grievance the Personnel Department shall be notified within three days and they shall take the case up locally with the Superintendent or Branch Manager and the Shop Steward and the man involved. Appeals necessary on grievances not adjusted locally to be made to the Board of Shop Stewards. If the decision of the Board of Shop Stewards is in favor of the employee and the company does not concur in the finding, a further appeal may be made to the Executive Board composed of the following: President, Vice-President, Secretary-Treasurer, Recording Secretary and Three Trustees."

Paragraph 7 provides: " Should any and all disputes or controversies arising under or in connection with the terms and provisions of the agreement or in respect to anything not herein expressly provided for, but germane to the general subject matter of this agreement, which differences cannot be adjusted by the representatives of the Union and of the Company, the same shall be submitted to arbitration."

The arbitration board was to consist of two representatives of the company and of the union to be selected within ten days " after

representatives of the Union and the Company fail to reach an agreement." In the event that the board of arbitration fails to agree, a fifth member was to be selected by mutual agreement "who shall be a disinterested party and whose decision in the matter shall be binding upon both parties." The final sentence of paragraph 7 states: "However, before any arbitration is requested, the Union and the Company shall first try and adjust the matter between themselves."

Paragraph 18 states that the provisions of the agreement "shall be expressly limited to hours, wages and working conditions of the employees and no provision hereof shall be construed to restrain the Company from the full and absolute operation and management of its business."

In accordance with paragraph 13 a reorganization of the method and manner of the distribution of the respondent's products was undertaken. It was conceded by petitioner's counsel on the argument that before such reorganization was commenced it was discussed with the union representatives. Petitioner claims that such reorganization has brought about certain hardships to some of the respondent's employees by increasing their hours of labor and the services to be performed. However, since a reorganization was permitted by the agreement, it may be recognized that the working conditions of the employees would be affected to some degree.

Respondent claims, however, without contradiction, that it has already settled and is continuing to settle all grievances which the employees have filed with the shop stewards in accordance with the provisions of paragraphs 6 and 9 of the agreement. There is no proof submitted by the union in the form of affidavits of the employees to show that they are dissatisfied with the settlement of their grievances. The respondent's affidavits, on the other hand, establish that approximately one-third of the fifty-two employees who were laid off as the result of the reorganization have been retained by the respondent in other capacities and that the men who have not as yet been re-employed have been given a preference on the employment roll of the company.

The entire agreement is instinct with the understanding that arbitration was not to be resorted to until the grievances of the employees were submitted to the adjustment process provided by paragraphs 6 and 9 of the agreement. The arbitration clause (¶ 7) makes this plain when it says, "which differences cannot be adjusted by the representatives of the Union and of the Company shall be submitted to arbitration * * *. However, before any arbitration is requested, the Union and the Company shall first

try and adjust the matter between themselves." There is no proof that the respondent has failed to use the adjustment machinery provided by the contract.

In view of the fact that under the terms of the agreement as outlined above there is no proof of any arbitrable dispute, this application is denied. (Civ. Prac. Act, § 1450.) Order signed.